REQUESTED BY: Senator Jennie Robak Nebraska state Legislature
You have requested our opinion on a question pertaining to the interpretation of the Telecommunications Act of 1996, Pub.L. No. 104-104, 110 stat. 56 (1996) (to be codified in pertinentpart at 15 U.S.C. § 792-5c and 47 U.S.C. §§ 151 to 614
[the "Act"]. Your specific question concerns § 253 (a) of the Act, which provides that "[n]o state or local statute or regulation, or other local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." Presently, public power districts in Nebraska are prevented from providing community antenna television [i.e. "cable" television] service in areas where cable television service is available from entities holding franchises issued pursuant to Neb. Rev. stat. §§ 18-2201 to 18-2206 (1991) or permits issued under Neb. Rev. stat. §§ 23-283 to 23-388 (1991) on April 24, 1987. Neb. Rev. stat. § 70-625 (1996). You note that you submitted an amendment to LB 660, an act pending before the Legislature "relating to telecommunications", proposing to amend the bill to delete the present statutory restriction which precludes public power districts from engaging in the business of providing cable television service. (AM1650). Your question is whether the preemptory provision contained in § 253 (a) of the Act is applicable to providers of cable television service.
"Interpretation of a statute must begin with the statute's language." Mallard v. U.S. Dist. Court for the Southern Dist. ofIowa, 490 U.S. 296, 300 (1989); accord Pennsylvania Dept. ofPublic Welfare v. Davenport, 495 U.S. 552 (1990). In construing statutes, the U.S. Supreme Court has stated that it will "begin with the language of the statute and ask whether Congress has spoken on the subject before [it]; `If the intent of Congress is clear, that is the end of the matter, for the court . . . must give effect to the unambiguously expressed intent of Congress.'"Norfolk and Western Ry. Co. v. American Train Dispatchers Ass'n,499 U.S. 117, 128, (1991) (quoting Chevron U.S.A., Inc. v.Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43
(1984)).
The Act made substantial changes to Title 47, Chapter 5 of the United States Code, pertaining to "Wire or Radio Communications." One author summarizing the impact of the Act has stated:
 The passage of the bill officially launched a new era of telecommunications in the United States. The Telecommunications Act of 1996 proposes to increase competition and advance technology within the communications industry, and to lower prices and provide more choices for consumers. This Act, encompassing the first major change in the telecommunications industry since the Communications Act of 1934, addresses the new world of information of technology and industry advancements.
Cook, Catherine, Legislative Summary: The Telecommunications Actof 1996, 6 DePaul LCA J. Art Ent. L. 237 (Spring 1996).
Among the changes was the enactment of § 253, entitled "Removal of barriers to entry." Subsection (a) of § 253 provides:
 No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service. (emphasis added).
The Act defines "telecommunications service" as "the offering of telecommunications for a fee directly to the public, or to such classes of users as to be effectively available directly to the public, regardless of the facilities used." 47 U.S.C. § 153
(46). (emphasis added). The term "telecommunications" is defined to mean "the transmission between or among points specified by the user, of information of the user's choosing, without change in the form or content of the information as sent and received." 47 U.S.C. § 153 (43).
By its plain terms, § 253 (a) of the Act applies only to prohibit state or local statutes or regulations which prohibit entities from providing interstate or intrastate "telecommunications service." The Act specifically defines "telecommunications," and "telecommunications service," to relate to the transmission of information by the user of the service between or among points specified by the user. These definitions simply are not applicable to the provision of "cable" television service, as that term is commonly understood.
Indeed, the distinction between "cable" television service, and "telecommunications service," as used in § 253 (a), was recognized by Congress. Federal statutes governing "Cable Communications" are contained in a separate subchapter of Chapter 5 of Title 47, "subchapter V-A." Subparagraph (6) of the definitional provision of this Subchapter, 47 U.S.C. § 522, provides that
the term "cable service" means —
 (A) the one-way transmission to subscribers of (i) video programming, or (ii) other programming service, and
 (B) subscriber interaction, if any, which is required for the selection or use of such video programming or other programming service; . . . .
The general definitional section of the Act provides the term "`cable service' has the meaning given such term in section 522 of this title." 47 U.S.C. § 153 (7).
Thus, we believe it is clear that Congress understood, and intended to make, a distinction between "telecommunications service" and "cable service" in enacting § 253 (a), which preempts state or local statutes or regulations barring the ability of entities to provide interstate or intrastate "telecommunications service." Had Congress intended to broaden the scope of the prohibition in § 253 (a), or to otherwise add to the Act a separate provision including similar language governing cable television service providers, it could have done so. It did not.
In sum, it is our opinion that the prohibition in § 253 (a) of the Act, barring state or local statutes or regulations which prohibit entities from providing "interstate or intrastate telecommunications service", has no application to state or local regulations governing the provision of "community antenna" [i.e. "cable"] television service. We therefore conclude that § 253 (a) does not, by its plain terms, have any application to that portion of § 70-625 which generally prohibits public power districts from engaging in business as providers of cable television service.
Very truly yours,
 DON STENBERG Attorney General
 L. Jay Bartel Assistant Attorney General
cc: Patrick J. O'Donnell Clerk of the Legislature
APPROVED BY:
Don Stenberg
Attorney General